CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ERRORS

OF THE

# STATE OF CONNECTICUT.

JACOB BROSCHART *vs.* HENRY TUTTLE.

New Haven & Fairfield Cos., Jan. T., 1890.  CARPENTER, LOOMIS, TOR-
RANCE, FENN and PRENTICE, Js.

The statute (Gen. Statutes, §§ 2689, 2690), requires the drivers of vehicles
meeting on the highway to turn to the right, and gives treble damages
to any person injured by the neglect of another to do so.  Held that
the proper mode of applying the statute is for the jury to bring in a
verdict for single damages and for the court to render judgment for
treble the amount.

Whether, to recover treble damages, it is necessary to refer to the statute in
the complaint: *Quære.*

If it be not, yet it must appear upon the record that the verdict was neces-
sarily founded upon a violation of the statute by the defendant.

Where the plaintiff obtained a verdict for an injury from a collision of
teams on the highway, and the complaint alleged that the plaintiff
was driving on the right hand side of the road and that the defendant
was driving from the opposite direction a horse that was, and that he
knew to be, untrained, balky and vicious and liable to sudden starts in
which he became unmanageable, and that when they were nearly oppo-
site each other the defendant carelessly drove, or permitted his horse
to go, across the highway against the horse of the plaintiff, it was held
that it did not sufficiently appear that the verdict was founded upon a
violation of the statute by the defendant, and that the plaintiff was not
entitled to the threefold damages under the statute.

The plaintiff at the time of the collision, which occurred within a city, was
driving at a rate of speed forbidden by a city ordinance.  Held that he
was not, by this mere fact, debarred from a recovery.

The violation of the ordinance on the part of the plaintiff, to defeat his
recovery, must have contributed to the accident.

VOL. LIX.—1                                         (1)

Broschart v. Tuttle.

There is no ground for a distinction between a plaintiff's illegal act as a contributing cause of his injury, and his negligence as such a contributing cause.

Proposals made for a compromise between parties in controversy cannot be received in evidence; but admissions of an independent fact made in the conversation may be shown.

After a negotiation for a settlement had failed and the parties were about separating, and continued in conversation, it was held that declarations of one party to the other were clearly admissible against the party making them.

[Argued January 28th—decided April 15th, 1890.]

ACTION to recover for the loss of a horse killed by the negligence of the defendant in a collision upon the highway; brought to the Superior Court in New Haven County, and tried to the jury before *Andrews, J.*

The declaratory part of the complaint was as follows :—

1. On the 14th day of January, 1884, the plaintiff was driving a mare attached to a sleigh, along a highway known as the Boulevard, and leading into New Haven from Hamden.

2. Said sleigh and mare were then the property of the plaintiff.

3. The mare was sound, well broken, gentle, of great speed, and of great value.

4. On said 14th day of January the defendant was riding along the same highway, in an opposite direction from the plaintiff, in a sleigh drawn by a horse belonging to the defendant.

5. Said horse so belonging to the defendant was badly broken, untrained, balky, and subject to sudden starts of more or less unmanageable action ; all of which the defendant well knew before he drove upon said highway that day.

6. The plaintiff was driving entirely on the west side or right hand side of the highway, and while he was so driving he met the defendant and his said horse, and when the plaintiff and defendant were nearly opposite each other, the defendant carelessly and negligently drove, or permitted his said horse to go, across said highway, and to strike violently against the said mare of the plaintiff, and with such force

that the shaft of the defendant's sleigh was driven into the abdomen of the plaintiff's mare, so as to produce a mortal wound, from which mortal wound the said mare died on the 17th day of January, 1884.

The plaintiff claimed $2,500 damages. The jury brought in a verdict in his favor for $700. He then moved the court to render judgment for threefold the amount of the verdict, under Gen. Statutes, § 2690. This motion the court denied. Both parties appealed—the plaintiff on the ground of the denial of this motion, and the defendant for error in the rulings and charge of the court. The facts are fully stated in the opinion.

*L. Harrison* and *E. P. Arvine*, for the plaintiff.

1. The court should have granted our motion that damages be trebled. The statute expressly gives these damages where any person is injured by the neglect of another to turn to the right, when they meet in driving on the highway. Gen. Statutes, § 2690. A violation of this statute is fully alleged in the complaint. It is stated that the plaintiff was on the right hand side of the street and kept to the right, and that the defendant, coming from an opposite direction, drove across the street upon what was to him the left hand side, and ran into the plaintiff. The plaintiff sets out no other cause of action or ground of liability than the violation of the statute. The only act of the defendant which is complained of, out of which any cause of action arises, is the driving of his horse, or permitting his horse to go, upon the wrong side of the highway, when he collided with the plaintiff. It is alleged that he did this negligently. The act must have been either negligent or wanton, or it would not have been a violation of the statute. No other negligence is alleged. The complaint, therefore, must be taken as founded upon the statute, unless it is necessary in such a complaint to refer directly to the statute. It was unnecessary to refer to the statute, or to allege that the action was founded upon it. All forms of actions are abolished. It is no longer necessary to say that the act complained of is con-

trary to the form of the statute, to distinguish the action from trespass on the case. There is now but one form of action, and the plaintiff is only required to state the facts that constitute his cause of action. It is not necessary to give the defendant notice of any matters of law. Pomeroy on Remedies, §§ 529, 530 ; Bliss on Code Pleading, § 181 ; Sedgwick on Stat. & Const. Law, §§ 113, 114. It is not necessary to ask for treble damages. The court adjudges them as matter of law. *Hart* v. *Brown*, 2 Root, 301 ; *Lobdell* v. *Inhab. of New Bedford*, 1 Mass., 153 ; Sedgwick on Damages, 571 ; 2 Wait's Actions & Defences, 452.

2. The court did not err in refusing to charge the jury that the plaintiff's violation of the city ordinance would be a conclusive bar to his recovery. The city has power, given by its charter, to make such rules and regulations as it sees fit for the preservation of public order. But these rules can have no effect except between the city and the person violating them. It cannot create new duties between third parties, and it cannot, in the absence of express power in its charter, create rules of civil liability between third parties, and thus make that negligence which was not negligence before. *City of Hartford* v. *Talcott*, 48 Conn., 526 ; *Kirby* v. *Boylston Market Asso.*, 14 Gray, 249 ; *Heeny* v. *Sprague*, 11 R. Isl., 456 ; *Moore* v. *Gadsden*, 93 N. York, 12 ; *Fuchs* v. *Schmit*, 8 Daly, 317 ; *Van Dyke* v. *Cincinnati*, 1 Disney, 532. Otherwise there might be a different rule of negligence in every city and borough in the state, without reference to their population or to the circumstances. This would certainly be the case if a violation of a municipal ordinance were conclusive on the subject of negligence. But the weight of authority is decidedly against its conclusive character. Redfield on Negligence, § 104 ; *Frost* v. *Plumb*, 40 Conn., 111 ; *Steele* v. *Burkhardt*, 104 Mass., 59 ; *Hanlon* v. *So. Boston Horse R. R. Co.*, 129 id., 310 ; *Newcomb* v. *Boston Protective Department*, 146 id., 596 ; *Knupfle* v. *Knickerbocker Ice Co.*, 84 N. York, 488 ; *Platz* v. *City of Cohoes*, 89 id., 219 ; *Hamilton* v. *Goding*, 55 Maine, 419 ; *Heeney* v. *Sprague*, 11 R. Isl., 456 ; *Lester* v. *Howard Bank*,

33 Maryl., 558; *Niemeyer* v. *Wright*, 75 Virg., 239; *Western Atlantic R. R. Co.* v. *Jones*, 65 Geo., 631; *Chicago, B. & Q. R. R. Co.* v. *Sims*, 17 Neb., 691; *Cook* v. *Johnson*, 58 Mich., 437; *Sutton* v. *Town of Wauwatosa*, 29 Wis., 21; *Schmid* v. *Humphrey*, 48 Iowa, 652; *Harris* v. *Runnels*, 12 How., 79; *Gold Mining Co.* v. *Nat. Bank*, 96 U. S. R., 640; *Wetherell* v. *Jones*, 3 B. & Adol., 221.

3. The declarations of the defendant, objected to by his counsel, were properly admitted by the court. They were in no way connected by the offer of compromise. An admission of a fact is none the less admissible because made in connection with an offer of compromise. *Hartford Bridge Co.* v. *Granger*, 4 Conn., 142, 148; *Fuller* v. *Hampton*, 5 id., 416, 426; *Marsh* v. *Gold*, 2 Pick., 284; *Home Ins. Co.* v. *Baltimore Warehouse Co.*, 93 U. S. R., 527, 548.

*W. C. Case* and *L. N. Blydenburgh*, for the defendant.

1. The court properly refused to allow treble damages. The complaint alleges nothing to show that the defendant has violated the statute. The plaintiff does not claim treble damages in his complaint. The jury have not found that the statute was violated, and there is nothing in the case to show that the plaintiff was entitled to the damages he sought to recover from the court after the jury had given him all the damages they thought he was entitled to. In order to bring the defendant within the provisions of the statute, it must appear that the plaintiff and defendant while driving their teams met each other in a public highway, and that the defendant did not turn to the right and slacken his pace, so as to give the plaintiff half the traveled path, although it was practicable, and did not give him a fair and equal opportunity to pass; and that on account of the defendant's failure to comply with these requirements, he drove against the plaintiff's vehicle, which caused the damage which the plaintiff sustained. None of these facts appeared in the plaintiff's complaint, except that the plaintiff was driving in an opposite direction from the defendant;

but it is alleged that the defendant was negligent, and the whole case is put upon his negligence.

2. The court erred in its charge, and in its refusal to charge as requested, with regard to the effect of the plaintiff's violation of the city ordinance upon his right to recover. The question is not whether, because he was violating the ordinance, the plaintiff was guilty of such contributory negligence as would defeat his recovery; but whether the plaintiff could recover for injuries sustained while violating the law, if that violation contributed to his injury, or in other words, whether the plaintiff could recover for injuries sustained while violating law, when it was on account of the act which constituted the violation of the law that the plaintiff suffered the injury complained of. Contributory negligence shown by fast driving is very different from the willful violation of the law; and while the rate of speed fixed by the ordinance is a proper thing to be taken into consideration in determining whether the driving of the plaintiff was so rapid as to constitute negligence, consideration for that purpose alone does not go far enough, and yet it was for that purpose and in that connection only that the jury were allowed to consider the ordinance. The difference between contributory negligence and violation of law is recognized and approved in a case recently decided in Massachusetts. *Newcomb* v. *Boston Protective Department*, 146 Mass., 596. The court says in that case:—"As a general rule, in deciding a question in relation to negligence, each element which enters as a factor into one's act to give it character is to be considered in connection with every other, and the result is reached by considering all together. But for reasons which will presently appear, illegal conduct of a plaintiff directly contributing to the occurrence on which his action is founded, is an exception to this rule. * * * No case has been brought to our attention, and upon careful investigation we have found none, in which a plaintiff whose violation of law contributed directly and proximately to cause him an injury, has been permitted to recover for it; and the decisions are numerous to the con-

trary." The doctrine that a person who is engaged in the violation of law cannot recover for injuries sustained while violating the law, if that violation directly contributed to those injuries, is sustained by the following decisions:— *Heland* v. *Lowell*, 3 Allen, 407 ; *Hall* v. *Ripley*, 119 Mass., 135; *Tuttle* v. *Lawrence*, id., 276 ; *Smith* v. *Boston & Maine R. R. Co.*, 120 id., 490 ; *Lyons* v. *Desotelle*, 124 id., 387 ; *Cratty* v. *Bangor*, 57 Maine, 423 ; *Baker* v. *Portland*, 58 id., 199 ; *Norris* v. *Litchfield*, 35 N. Hamp., 271 ; *Davis* v. *Guarnieri*, 45 Ohio St., 470. See also, as bearing upon this principle, *Finn* v. *Donahue*, 35 Conn., 216 ; *Funk* v. *Gallivan*, 49 id., 128 ; *Oscanyan* v. *Arms Co.*, 103 U. S. R., 261.

3. The court erred in allowing the evidence of the conversation held between the plaintiff and defendant to go to the jury and to be considered by them. The remarks were all part of the conversation held by the parties who had met for the purpose of compromising the matter in controversy, and so that conversation cannot be introduced as evidence in the case, nor can any part of it, unless during the conversation one of the parties admitted a fact, and then testimony that he did admit the fact is all that can be introduced. *Stranahan* v. *East Haddam*, 11 Conn., 507. The plaintiff in this case did not claim that this evidence was admissible because the defendant admitted a fact, but because he did not deny his liability. Why should he have done so? The parties had not met to discuss the question whether the defendant was liable, but merely to see whether they could settle their controversy. Surely they had a right to meet for that purpose, and the law is so that their conversation while engaged in the endeavor to settle their difficulties was privileged and not to be used against either party, unless one of the parties admitted a fact because it was a fact. *Hartford Bridge Co.* v. *Granger*, 4 Conn., 142 ; *Strong* v. *Stewart*, 9 Heisk., 137 ; *Wood* v. *Wood*, 3 Ala., 756 ; *Daniels* v. *Woonsocket*, 11 R. Isl., 4 ; *Rideout* v. *Newton*, 17 N. Hamp., 71 ; *State Bank* v. *Dutton*, 11 Wis., 371 ; *Campau* v. *Dubois*, 39 Mich., 274 ; *Dailey* v. *Coons*, 64 Ind., 545.

LOOMIS, J.   This is an action to recover damages for the loss of a horse, caused by the alleged negligence of the defendant in so driving and managing his horse and sleigh as to come into collision with the plaintiff's horse and sleigh, while the parties were driving in opposite directions along a street in the city of New Haven.   The case was tried to the jury and resulted in a verdict of seven hundred dollars in favor of the plaintiff, and thereupon the plaintiff filed a motion that he be awarded treble damages pursuant to the statute, which was overruled by the court.   Both parties have appealed to this court—the plaintiff on account of the denial of his motion for treble damages, and the defendant on account of alleged errors in the charge to the jury and in the rulings of the court as to the admission of evidence.

The statute upon which the plaintiff bases his claim for treble damages, provides as follows :—

" Sec. 2689. When the drivers of any vehicles for the conveyance of persons shall meet each other in the public highway, each shall turn to the right and slacken his pace, so as to give half the traveled path, if practicable, and a fair and equal opportunity to pass, to the other.

" Sec. 2690. Every driver of any such vehicle who shall, by neglecting to conform to the preceding section, drive against another vehicle and injure its owner, or any person in it, or the property of any person, * * * shall pay to the party injured treble damages."

Whether, in order to recover the extraordinary damages given by the statute, it is necessary to refer to it specifically in the complaint, we will not determine, but it is conceded to be necessary to state such facts in the complaint as will clearly bring the defendant within the provisions of the statute.

The plaintiff may have an election between his remedy at common law and the one given by statute, but the court has no election and can only render such judgment in damages as the record calls for.   In order therefore to require the court to threefold the damages it must appear that the verdict was necessarily founded upon a violation of the statute

on the part of the defendant. This does not appear. The complaint does not allege that when the teams of the plaintiff and defendant were about to meet in the public highway the defendant failed to turn to the right and slacken his pace, nor that it was practicable for him to do so ; nor that the defendant failed to give the plaintiff a fair and equal opportunity to pass ; nor that he drove against the plaintiff's horse or vehicle on account of his failure to do these acts. The fifth and sixth paragraphs of the complaint, which were traversed, set forth the principal actionable facts. The fifth avers " that the defendant's horse was badly broken, untrained, balky, and subject to sudden starts of more or less unmanageable action, all of which the defendant well knew before he drove upon said highway that day." It may be that in these facts alone the negligence which occasioned the injury consisted, rather than in the things which the statute mentions. This is not a matter of mere speculation, for it appears from the finding that " the plaintiff offered evidence to prove, and claimed that he had proved, that the horse of the defendant was a vicious, unmanageable and balky horse, which the defendant well knew, and that it was so improperly hitched to the sleigh as in traveling to strike the runner with one or both of the hind hoofs, thereby causing it to take fright and become difficult to control ; that when the defendant first undertook to start from the Boulevard House his horse balked, and balked for a considerable time, and that while so balking the defendant was advised by the hostler of the Boulevard House to go home by way of Shelton avenue, where there was no crowd and no number of teams passing, and that said hostler offered to take his horse for him out upon said avenue, and that the defendant could and ought to have gone home that way, but that in fact the defendant refused to go that way and persisted in driving up the Boulevard, where there was a large crowd on the sides of the street and many teams passing to and fro, and that when finally the horse of the defendant did start it bucked and jumped and pursued a zigzag course up the avenue and was not controlled by its driver up to the time of the accident."

The sixth paragraph of the complaint avers that "when the plaintiff and defendant were nearly opposite each other, the defendant carelessly and negligently drove, or permitted his horse to go, across the highway, and to strike violently against the mare of the plaintiff." It would seem from this allegation that the defendant had already turned to or was on the opposite side of the highway from the plaintiff, and that it might well have been one of those "sudden starts of more or less unmanageable action," just set forth, that caused the strange movement towards the plaintiff and the consequent collision.

If this were the proper case for the application of the statute, we see no objection to the mode of proceeding adopted by the plaintiff. Indeed, we think the practice is in such cases for the jury to find such damages as they think proper, and then the court enhances the amount in its judgment to meet the statutory requirements. *Hart* v. *Brown*, 2 Root, 301; *Brewster* v. *Link*, 28 Mo., 147; *Lobdell* v. *Inhab. of New Bedford*, 1 Mass., 153; *Swift* v. *Applebone*, 23 Mich., 252; *Wynne* v. *Middleton*, 1 Wils., 126.

The defendant's appeal is based upon several assignments of error, but the important one relates to the effect upon the plaintiff's right to recover of his own violation of a city ordinance, which contributed, as the defendant claimed, directly to the injury. The question. and the manner in which it arose, appear from the finding as follows:—

In connection with the claim that the place of the accident was within the city limits and was in a public highway of the city, the defendant further claimed that the view of both the plaintiff and defendant was so obstructed as to render it impossible to see the teams as they were approaching each other in time to avoid the collision by the exercise of ordinary care, and that up to the instant of the accident the plaintiff had been and was driving at the speed of at least fifteen miles per hour; and the defendant put in evidence an ordinance of the city of New Haven in force at the time of the accident, to wit: "No owner or person having for the time being the care or use of any horse or other

beast of burden, carriage or draft, shall ride, drive or permit the same to go at a faster rate than an ordinary trot, or six miles an hour, in any street in said city." Charter and Ordinances of the City of New Haven, 1883, p. 122, sec. 58. And he claimed that the law is so that if the jury should find that the plaintiff was not following this ordinance at the time of the accident, such unlawful act, if it directly contributed to the plaintiff's injury, was a conclusive bar to the plaintiff's recovery in this action, and not merely evidence of contributory negligence.

This request was not complied with by the court, but the charge to the jury on this point was as follows:—" If you find that the ordinance was in fact violated and that its violation entered into the accident which you are now considering as a cause or one of its causes, you may take it into consideration as one of the circumstances to be considered by you in passing upon the question of whether the defendant was negligent, and in passing upon the question of whether the plaintiff himself contributed by his own negligence or want of care to the injury. I say it is one of the circumstances which may be taken into consideration by the jury in order to determine whether or not the defendant was negligent, and to determine whether or not the plaintiff contributed by his want of care to his own injury. Even if the plaintiff was violating the ordinance in the way that I have mentioned, in my judgment it does not necessarily show that he was guilty of negligence in such a way as to deprive him of the right to recover. I think it is not conclusive. It is one of the facts which you are to consider, and, after taking all the facts together, if you find that the plaintiff did not contribute to his own damage, he is entitled to recover if he makes out the other parts of the case to your satisfaction, notwithstanding the ordinance."

Then in another connection the court, recurring to the same question, told the jury again:—" But, gentlemen, driving on the right hand side or the left hand side of the centre line is not, in my judgment, a conclusive circumstance either way. I don't think that is conclusive. I think it is one of

the facts which enter into the case substantially in the same way as this ordinance enters into it; that is, in an analogous way. Being on the left hand side of the middle line might be evidence of negligence, or the circumstances might be such that it was not negligence. Driving faster than the ordinance permits might be negligence, or the circumstances might be such that it would not be any negligence at all; or at least, not such negligence as to prevent a party from recovery; or it might be such negligence as would make a party liable. But it is for you to say, gentlemen; these are the circumstances, all of which go into the case, and upon the summing up of them all you are to say whether the defendant was negligent or not, and also whether the plaintiff was so or not."

And again, as the judge was about to conclude his charge, a juror inquired whether the plaintiff incurred any responsibility in getting up the trot? The court thereupon added:—" I think the question of the ordinance is all that there is about it. It seems to me that what I have said in respect to the right of way, the common, public highway, is all covered by that. I don't think because a man drives a horse faster than a certain rate he thereby necessarily becomes liable. It is a circumstance from which his negligence or want of care may be proved. In this particular case I do not think he incurred any liability; he might be liable to a fine or something else, but I don't think in this particular case, gentlemen, that of itself makes him liable; it is only one of the circumstances. You should take the whole case together and determine whether he was negligent or whether he was not negligent."

It is manifest from these quotations that the legal proposition contained in the charge as actually given was radically different from that contained in the defendant's request. The latter made an illegal act, if it directly contributed to the injury, a bar to recovery as matter of law; while the former did not recognize the plaintiff's illegal act as necessarily a contributory fault at all. It virtually eliminated the legal element and reduced the matter to a mere

question of fact within the exclusive province of the jury, who were to receive the matter as they would any item of evidence. If it did not in their opinion prove negligence in fact, it amounted to nothing. If it did prove negligence, then there was still another question—not whether the illegal act caused the injury, but whether the negligence which they actually found proved from all the evidence (including the illegal act) caused it. We think the charge erroneous and that the request contained a true statement of the law as it has been established by a decided preponderance of judicial authority.

It is true there is a seeming disagreement in the cases which at first impression is quite confusing, yet upon more careful scrutiny it will appear that the difference consists, not in the principle adopted, but mostly, if not entirely, in the mode of its application.

While all, or nearly all, the courts of last resort in the United States that have had the subject under consideration, agree in the legal proposition that any culpable negligence or any illegal act on the part of the plaintiff which essentially contributes to his injury will prevent a recovery, yet there is a marked difference in opinion as to what constitutes a contributory cause of injury. This difference however is mostly, if not entirely, confined to cases affected by the plaintiff's violation of the Sunday law.

For instance, the courts of Massachusetts have held in numerous cases (and several other states have followed the same rule) that a person traveling on Sunday, not from necessity or charity, cannot recover of a town or city for injuries caused by a defective highway or even by the carelessness of another traveler. *Bosworth* v. *Inhab. of Swansey*, 10 Met., 363 ; *Jones* v. *Inhab. of Andover*, 10 Allen, 18 ; *Feital* v. *Middlesex R. R. Co.*, 109 Mass., 398 ; *Smith* v. *Boston & Maine R. R. Co.*, 120 Mass., 490 ; *Cratty* v. *City of Bangor*, 57 Maine, 423.

But in reaching such a result the courts of Massachusetts have uniformly assumed that the plaintiff's unlawful act contributed to his injury; while on the other hand the courts of

New York and of some other states following the same rule have reached the opposite result, and have held that the plaintiff in such cases may recover, always giving as among the controlling reasons that the illegal act did not contribute to the injury.

There must of course be a fallacy somewhere in the reasoning that can reach opposite results while proceeding upon the same premises. It seems to us that the fallacy in the reasoning of those who support the Massachusetts rule consists in assuming (unconsciously no doubt) that a mere concurrence of the illegal act with the accident in point of time is to be treated as a concurring cause of the injury, which it is not, but rather a condition or incident merely. In all other cases than these affected by the Sunday law the courts of Massachusetts have discriminated and applied the principle of contributory fault in strict accordance with the distinction we have suggested; for instance, in *Welch* v. *Wesson*, 6 Gray, 505, where two persons were racing contrary to law, and one of them negligently injured the other, it was held the injured party could recover, because his own illegal act did not contribute to his injury. So where the plaintiff's team was standing in a street in a manner prohibited by statute and was carelessly run into by the defendant, a recovery was sustained upon the same ground. *Steele* v. *Burkhardt*, 104 Mass., 59. And in *Gregg* v. *Wyman*, 4 Cush., 322, it was decided there was error in holding a plaintiff's illegal conduct to be an essential element of his case, when in fact it was merely incidental to it.

The fallacy of the reasoning in support of the Massachusetts rule in cases affected by the Sunday law has, we think, been most ably exposed by the courts of Wisconsin, Maine, Rhode Island, Vermont, and New York; while at the same time, as we shall see, they strongly support the proposition of law contained in the defendant's request to charge.

In *Sutton* v. *Town of Wauwatosa*, 29 Wis., 21, the plaintiff was driving his cattle to market on Sunday in violation of the statute, when they were injured by the breaking down of a defective bridge, which the defendant town was

bound to maintain. The defense was the plaintiff's own illegal act. DIXON, C. J., in delivering the opinion of the court, said: " To make good the defense it must appear that a relation existed between the act or violation of law on the part of the plaintiff, and the injury or accident of which he complains, and that relation must have been such as to have caused, or helped to cause, the injury or accident, not in any remote or speculative sense, but in the natural and ordinary course of events, as one event is known to precede or follow another." It is then shown that a violation of the Sunday law is not of itself an act, omission or fault of this kind with reference to a defective bridge, over which a traveler may be passing, unlawfully though it may be, because the violation of such a law has no tendency to cause it. All other conditions remaining the same, the same accident would have happened on any other day, or if the traveler was at the time on an errand of necessity or mercy.

The case of *Baker* v. *City of Portland*, 58 Maine, 199, did not arise under the Sunday law, but the plaintiff was injured by a defect in the highway while driving at a rate of speed prohibited by the village ordinance, and the judgment in favor of the plaintiff was sustained expressly upon the ground that the jury had found that the fast driving did not contribute to the injury. BARROWS, J., in delivering the opinion of the court said :—" The defendant has cited a strong line of cases showing that when the plaintiff was violating a city ordinance he could not recover. But in all the latter class of cases it will be seen upon examination that the wrongful act of the plaintiffs either was, or was assumed to be, in some manner or degree contributory to the producing of the injury complained of. * * * Undoubtedly there are many cases where the contemporaneous violation of the law by the plaintiff is so connected with his claim for damages as to preclude his recovery. * * * But the fact that a party plaintiff was at the time of the injury passing another wayfarer on the wrong side of the street, or without giving him half the road, or that he was

traveling on runners without bells in contravention of the statute, or that he was smoking a cigar in the street in violation of a municipal ordinance, while it might subject the offender to a penalty, will not excuse the town for a neglect to make its ways safe and convenient for travelers, *if the commission of the plaintiff's offense did not in any degree contribute to produce the injury of which he complains.*"

In *Baldwin* v. *Barney*, 12 R. Isl., 392, where it was held that a person illegally traveling on Sunday along a highway could recover against one who recklessly caused a collision and consequent injury to the plaintiff, DURFEE, C. J., referring to the Massachusetts cases, said:—" The logic of these cases is that a person who receives an injury while traveling contributes to that injury by the act of traveling and that he is therefore bound to show his right to travel in order to show that his own fault did not concur in causing the injury." The Chief Justice then proceeds to demonstrate the fallacy of this position by many arguments and pertinent illustrations, and shows that in that case the injury must be regarded as a mere incident or concomitant of the traveling and not its effect, and that it would have happened just the same if the plaintiff, instead of being engaged in violating the law, had been going to or from church.

In *Johnson* v. *Town of Irasburgh*, 47 Verm., 28, the court, while holding with the courts of Massachusetts that a person traveling on Sunday in violation of the statute could not recover of a town for an injury sustained by reason of a defect in the highway, yet places its decision upon radically different ground, namely, that the town was under no legal duty to furnish a safe highway to travel upon when at that precise time he was forbidden by law to travel over the highway, and owing no duty to him they could not be liable for any neglect. This position was sustained by strong arguments and by the citation of many cases analogous in principle. This may be the true ground and that the Massachusetts cases referred to are right in result and wrong simply in the reasons given in their support; but whether this is so or not we have no occasion now to determine. We

refer to the case because the opinion of the court, as given by Ross, J., not only shows that the reasoning that supports the Massachusetts rule in this class of cases is wrong, but establishes the true principle and distinction in regard to illegal acts of a plaintiff that will prevent him from recovering for injuries received. The court say in regard to the cases then in hand :—" It is difficult to maintain that the traveler's illegal act contributed to the happening of the accident. The insufficiency of the highway remaining the same, and the traveler being at the place of the insufficiency under the same circumstances on any other day of the week, the same accident or injury would have befallen him. A contributory cause is one which under the same circumstances would always be an element aiding in the production of the accident. The fact that the traveler is unlawfully at the place of the accident does not contribute to the overturn of his carriage or the production of the accident. The same forces and causes would have overturned the carriage and caused the accident as well on a week day as on the Sabbath ; as well when the traveler was lawfully at the place of the accident as when unlawfully there. * * * Neither can the fact that the party receiving the injury was at the time engaged in an unlawful act deprive him of the right of recovery. If the plaintiff at the time of the injury had been profaning the name of the Deity he would have been engaged in an unlawful act."

The case of *Platz* v. *City of Cohoes*, 89 N. York, 219, was cited in behalf of the plaintiff as conclusive in his favor provided this court should accept it as containing the true rule of law. We do not so regard it, but consider the case as falling into the same line with the other cases referred to and in perfect harmony with them so far as the point under discussion is concerned. So that its acceptance by us will not require us to sustain the ruling complained of, but on the other hand we think it recognizes and adopts principles that sustain the defendant's position. It was there held, contrary to the Massachusetts rule, that where, through the culpable omission of duty on the part of a city, a street had

become so obstructed that a traveler was thereby injured, it was no defence that the accident happened on Sunday and that the plaintiff at the time was traveling contrary to the Sunday law. The reasoning by which this position was supported was essentially the same as in the other cases we have referred to. As in those cases, so in this, the court makes an exhaustive argument to show that the illegal act of the plaintiff did not contribute to his injury, showing by necessary implication that the court regarded that fact as a controlling one. DANFORTH, J., in giving the opinion, after citing *Baldwin* v. *Barney, supra,* and other similar cases, said :—" It may be said that if the plaintiff had obeyed the law and remained at home and not traveled, the accident would not have happened. That is not enough. The same obedience to the law would have saved the plaintiffs in the cases just cited. It must appear *that the disobedience contributed to the accident,* or that the statute created a right in the defendant which it could enforce. But the object of the statute is the promotion of public order and not the advantage of individuals. The traveler is not declared to be a trespasser upon the streets, nor was the defendant appointed to close it against her. *In such an action the fault which prevents a recovery is one which directly contributes to the accident.* * * * It may doubtless be said that if the plaintiff had not traveled she would not have been injured ; and this will apply to nearly every case of collision or personal injury from the negligence or willful act of another. Had the injured party not been present he would not have been hurt. But the act of travel is not one which usually results in injury. It therefore cannot be regarded as the immediate cause of the accident, and of such only the law takes notice."

But there is still another reason given by the court in support of its conclusion which is particularly relied upon by the plaintiff's counsel as decisive of the present case.

We refer to the point that the Sunday law exhausts itself in the penalty prescribed, and that to give it further effect by forfeiting the plaintiff's right of action would be in effect adding to that penalty. This reason is given also

in the Wisconsin case. We find no fault with it if applied as we think the court intended. It is very important at the outset to look at the principle precisely as stated by the New York court:—" The courts may not add to the penalty imposed by that statute a forfeiture of the right of indemnity for an injury resulting from the defendant's negligence and *the violation of the statute cannot be regarded as the immediate cause of the injury.*"

The entire force of the principle consists in its connection with the fact last stated, which manifestly is the only foundation that can support it as a rule of law. It is only upon the assumption that the plaintiff's illegal act does not contribute to his injury that you can add to the penalty by denying a right of action for the injury. Surely one must first have a right of action before he can forfeit it. He cannot lose what he never had in fact or in right. Where the plaintiff's illegal act does contribute to his injury he has no right of action whatever and by so holding nothing is added to the prescribed penalty. It is plain that the New York court never intended to apply the principle to any case except to the one expressly stated, or one like it; that is, where the plaintiff's act had not contributed to his injury. To make any other than such a restricted application of the principle would produce most flagrant injustice and lead to most absurd results. It would enable a party to enforce a contract made upon Sunday or to come into court and demand judgment in his favor in an action founded upon any illegal transaction, provided it was subject to a penalty. Instead then of accepting the proposition that denial of recovery to a law breaker in such cases is equivalent to an addition to the penalty prescribed, we prefer, on the other hand, to hold that the allowing of a recovery, where the illegal act was a cause of his injury, would be equivalent to an exemption from the penalty to that extent in favor of one confessedly guilty and the imposition of it upon one confessedly innocent. If we were to look at the consequences to the plaintiff alone it would be true in a sense that his violation of law may reach beyond the pen-

alty prescribed and defeat his right of action, or rather prevent him from having such right. But it is our duty to consider the relation of the illegal act in question to third persons and to the cause which the plaintiff seeks to enforce against others.

It is no more unjust in principle to allow an injured person to recover compensation in damages from an entirely innocent third party, than it is to allow him to recover for a self-inflicted injury. The real principle is the same, (although the degree of injustice may not be,) whether the plaintiff was the sole author of his injuries or whether his illegal act or fault combined with that of the defendant to produce them, for, in such case, it is impossible to apportion the damages or to determine the relative responsibility of the parties, or whether the plaintiff would have been injured at all except for his own contribution to the result.

The principle that negligence on the part of the plaintiff contributing to his injury will prevent a recovery, is universally accepted. There can be no good ground for distinction in this respect between negligence and any illegal act which is a contributing cause of the injury. It may be easier to determine the effect of negligence in a given case than to determine the effect of an illegal act, and owing to the great number of prohibited acts, especially under city ordinances, cases have frequently arisen where courts have determined that certain illegal acts could not be considered contributory faults, yet the rule applicable to negligence and to illegal acts on the part of the plaintiff is precisely the same. To prevent recovery the negligence in the one case or the illegal act in the other, must have the relation to the injury of cause to the effect produced.

In every case which we have been able to examine, where it appeared that disobedience to the law directly contributed to the injury, it has been accepted as a perfect defence.

It will be noticed that in some of the cases we have cited the court discussed and decided, as matter of law, the question whether the fault of the plaintiff relied upon in those cases was one which could be considered as contribu-

ting at all to the injury. Ordinarily these matters are within the province of the jury. If however the fact relied upon as a contributory fault should be manifestly independent of the injury and not standing in the relation to it of cause and effect, the evidence to prove it could properly be ruled out by the court, or where the fact has been allowed to come into the case without objection to the evidence offered to prove it, the court may then determine its legal significance.

In the case at bar there can be no doubt that the rate of speed at which it was claimed the plaintiff was at the time going, might have contributed directly to the injury. The court could not properly have ruled out the evidence, but it was the exclusive province of the jury to determine at what speed the plaintiff was going, and whether it was within the prohibitory ordinance, and if so, whether the illegal act contributed to the collision. The court, as we have seen, did not allow the question to go to the jury in this light, but only as mere evidence of negligence; and herein we think the court erred.

The difference between the rule of law as laid down by the court and that contained in the defendant's request to charge, is clearly shown in the recent well-considered case of *Newcomb* v. *Boston Protective Department*, 146 Mass., 600. The plaintiff brought his action to recover for injuries received while sitting upon his cab, from the negligent driving of a wagon against it by a servant of the defendant corporation. There was evidence tending to show that at the time of the accident he was violating an ordinance by waiting in a street without placing his vehicle and horse lengthwise with the street, as near as possible to the sidewalk, and that this illegal conduct contributed to the injury. The question for review, as in the case at bar, related to the correctness of the instructions given to the jury by the presiding judge as to the effect of the plaintiff's unlawful act upon his right to recover for the injury received. In discussing the question the court says:—" As a general rule, in deciding a question in relation to negligence, each

element which enters as a factor into one's act to give it character is to be considered in connection with every other, and the result is reached by considering all together. But for reasons which will presently appear, illegal conduct of a plaintiff directly contributing to the occurrence on which his action is founded, is an exception to this rule. Such illegality may be viewed in either of two aspects. Looking at the transaction to which it pertains as a whole, it may be considered as a circumstance bearing upon the question whether there was actual negligence ; or looking at it simply in reference to the violated law, the act may be tried solely by the test of that law. In the latter aspect it wears a hostile garb, and an inquiry is at once suggested whether the plaintiff, as a transgressor of the law, is in a position to obtain relief at the hand of the law. In the first view, the illegal conduct comes within the general rule just stated ; in the second it does not. This distinction has not always been observed." The court then refers to decisions in different states, and continuing says :—" No case has been brought to our attention, and upon careful investigation we have found none, in which a plaintiff whose violation of law contributed directly and proximately to cause him an injury, has been permitted to recover for it; and the decisions are numerous to the contrary." The court, after citing some of the cases from other jurisdictions arising under the Sunday law, where a different conclusion was reached from that of their own court, concludes as follows : " But whatever criticisms may have been made upon the decisions or the assumptions in certain cases, that illegal action of a plaintiff contributed to the result or was to be treated as a concurring cause, or upon language in disregard of the distinction between a cause and a condition, there has been none upon the doctrine that when the plaintiff's illegal conduct does directly contribute to his injury it is fatal to his recovery of damages."

The defendant makes the further claim that the court erred in admitting as evidence a certain conversation between the parties. The record presents the question as follows :—At

a later stage of the case, when the plaintiff had reached the close of his direct testimony, he was recalled and Mr. Zacher put the following question :—" At the interview at Cowell's restaurant did Mr. Tuttle say anything as to whether you could win the suit if you brought one against him, and if so, what did he say?" To this question the defendant objected, the court admitted it, and the defendant excepted. The witness answered, "When I got ready to go away and after Mr. Cowell had gone out, Mr. Tuttle said, ' Look here now, you have three years' time to bring a suit against me; don't be in a hurry; you don't know so much about law as I do ; this is a jury trial, we are going to have this before a jury, and I know every juryman in the county, and you can't get twelve men together that will convict me I am sure ; there is always one that will stand out, and I know every one of them ; and furthermore, it will cost you six dollars to my one to fight the case. I am a lawyer myself and am acquainted with all the lawyers, and where it will cost you a dollar it will cost me twenty-five cents.' I said, ' I will see about this.' I went up to Judge Harrison and told him all about it." Mr. Case moved to strike out the answer of the witness as irrelevant and improper. The motion was overruled. During the time that the defendant was objecting to this testimony and the plaintiff's counsel was stating what he proposed to prove, all of which took place in the presence of the jury, the defendant made no objection to his so stating, and took no exception whatever. Mr. Henry Cowell testified in substance as follows : " I was at Cowell's restaurant on the occasion mentioned. The interview was in a room up-stairs. Mr. Broschart and Mr. Tuttle talked a good while. It was all friendly. We all three arose to go down stairs ; Mr. Broschart and myself were in advance, Mr. Tuttle was back in the room a little, I had got outside the door; Mr. Tuttle says to Mr. Broschart, ' Hold on, young man, I want to speak to you a minute.' Mr. Broschart turned back ; I went on down stairs, and heard nothing of what was said."

The authorities seem well agreed that proposals made while a compromise is in treaty between the parties cannot be of-

fered in evidence, but conversations in which an independent fact is disclosed may be admitted to prove it. It is admitted that there had been a conference between the parties in the presence of Cowell for the purpose of compromise, but the treaty had apparently concluded and Cowell had left the room and the plaintiff was in the act of leaving when the conversation in question occurred. It seems to have been prompted by the belief that the plaintiff was unwilling to compromise and inclined to bring a suit. The statements of the defendant were obviously made to discourage the bringing of a suit and probably with a view to bring about another conference in the future. We do not think the statements made by the defendant can be regarded as privileged within even the most liberal interpretation of the rule, but the doubtful point is whether the statements involve an admission of any material fact. Certain it is that there was no express admission, nor is it essential that there should have been, for admissions may be implied from the language or conduct of a party. The evidence relied upon may indeed fall far short of establishing the admission, but if it tends in any degree to this end it should be allowed to go to the jury for their consideration. *Marsh* v. *Gold*, 2 Pick., 285.

In the present case no existing fact bearing upon it is referred to, but the language consists wholly of boastful assertions of what the defendant may be able to accomplish by indirect means in the way of preventing a recovery. Some of the assertions, such for instance as refer to the relative expenses of the parties in the event of litigation, are clearly immaterial considered by themselves, but those assertions which refer, or may be construed to refer, to the defendant's ability, by the use of indirect or improper influences, to divide the jury and so prevent the plaintiff from recovery, may, we think, in the absence of other explanation, tend in some degree to evince a consciousness on the part of the defendant that he was really responsible for the plaintiff's injury. It is not certain of course that this is the true interpretation of the defendant's meaning, but as it seems to

us a possible one we think the evidence could be considered and weighed by the jury.

There was error in the judgment complained of upon the defendant's appeal, and a new trial is ordered.

In this opinion the other judges concurred.