**BOWLES v. FERRARA.**

Civ. A. No. 594.

District Court, D. Delaware.

Feb. 18, 1946.

On Petition to Amend July 11, 1946.

Howard L. Fussell, Enforcement Atty., of Wilmington, Del., for Office of Price Administration.

H. Albert Young, of Wilmington, Del., for defendant.

LEAHY, District Judge.

The Price Administrator seeks treble damages against defendant for having sold a used International Dump Truck at a price which exceeded the OPA ceiling. The action is based on Sec. 205(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 925(e),[1] hereinafter referred to as the "Act". The Ad-

---

[1] This section of the Act provides, in part:

"(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, ex- cept as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the

ministrator charges the truck was bought for use "in the course of his [defendant's] trade or business".

At trial certain facts were established beyond dispute. The truck was sold to Marini for $1,750. The evidence was, however, conflicting as to whether the truck was a 1937 model or a 1939 model. Defendant offered evidence to show that the truck was represented to him by the seller as a 1939 model. He further proved that the vehicle is registered with the Motor Vehicle Commissioner of Delaware as a 1939 model. Plaintiff offered in evidence a "Data Book for Dealers in Used Commercial Vehicles", containing a list of trucks, including International trucks, with serial numbers from which the year of the truck could be determined. This document disclosed that the truck was of a serial number produced by the manufacturer in 1937. Since the court must determine as a fact what commodity was sold by the defendant in order to determine what was the proper selling price, the objective question of fact as to which model was sold is pertinent. But, since the answer to the question is not obvious[2] and since I have discretion under the Statute relative to the amount of damage, I shall assume that this truck was a 1939 model. As a 1939 model, defendant would have been entitled to sell the truck at 55% of the base price ($2,340.84), or $1,287.46,[3] in an "as is" condition, without any of the specific improvements which defendant contends were made on the truck before it was sold.

Defendant argues that plaintiff has not proved an overcharge. He contends that the truck had on it additional extras by virtue of which the base price should have been increased $195.50[4] to $2,536.34 which would make the ceiling price for a 1939 model $1,394.99. Further, defendant offered evidence to show that he paid $1,650 for the truck but that before he sold it for $1,750 he made certain repairs to put the truck in better running condition and made certain other non-essential improvements at a cost in excess of $700. He contends on these facts he unnecessarily lost money on the transaction, for the truck could have been sold unrepaired and still would have been "a used vehicle" and the sale an "as is" sale as defined by Section 18(a) of the Regulation.

Defendant argues further that the jurisdictional facts necessary to the maintenance of the action by the Administrator have not been established and that therefore the suit should be dismissed. The theory of defendant is that the Administrator can sue only after the expiration of 30 days from the date of the occurrence of the violation, irrespective of action by the buyer, when the commodity is purchased "for use in the course of trade or business". The Administrator in Paragraph 5 of the complaint, so the argument runs, sought to sue on this theory and, since defendant's answer put this allegation in issue, plaintiff was bound to prove that the purchaser intended and did use the vehicle in the course of trade and business. There was no evidence adduced at trial showing that the purchaser contemplated or did, in fact, use the truck in the course of trade or business.

---

action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: Provided, however, That such amount shall be the amount of the overcharge or overcharges or $25, whichever is greater, if the defendant proves that the violation of the regulation, order, or price schedule in question was neither wilfull nor the result of failure to take practicable precautions against the occurrence of the violation * * * If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, and the buyer either fails to institute an action under this subsection within thirty days from the date of the occurrence of the violation or is not entitled for any reason to bring the action, the Administrator may institute such action on behalf of the United States within such one-year period. * * * * "

[2] And there was no showing that the Data Book was anything more than a publication for the convenience of the trade. It was consequently not such a document which is usually so obviously accurate that a court will accept without further proof all the statements contained therein as true.

[3] The truck, as a 1937 model in the same condition, would have had a ceiling price of $1,076.79.

[4] The extras disallowed simply because Marini denied receiving them were:

| | |
|---|---|
| Tow hook and loop | $21.50 |
| Triple cluster lights, front and rear | 10.00 |
| Fish plating | 30.00 |
| Spare tires | 134.00 |
| Total | $195.50 |

The pleadings and evidence raise the following questions for determination:

1. Does the Administrator have capacity to maintain this action;

2. Was there an overcharge; and, if yes,

3. What is the proper amount of damages allowable?

1. The Administrator has capacity to maintain this action. At the trial there was no direct evidence that the purchaser intended or, in fact, used the truck in the course of trade or business and defendant is correct in his argument that there is no presumption that one purchasing a commercial vehicle intends to use it in the course of trade. But, I think this admittedly "correct" contention of defendant is only an academic triumph, for it misses the point. The point is that the Administrator, irrespective of whether the commodity is purchased for use in the course of trade or business, may maintain an action provided the purchaser does not sue within 30 days of the occurrence of the violation. Now the court will take judicial notice that the purchaser did .not maintain such an action within such period in this court. Absent a showing by defendant that an action was, in fact, maintained in some other court by the purchaser, clearly the Administrator has the capacity to maintain this action.

2. There was an overcharge in the sale of the truck. Since the truck was admittedly sold for $1,750, there was an overcharge of at least several hundred dollars. The repairs to the motor and other non-essential improvements to the cost of upwards of $700 are irrelevant as far as the selling ceiling price is concerned. The only area of dispute concerns the extras in the amount of $195.50. The purchaser has denied that he received such extras and, since there was no persuasive evidence other than defendant's statement of his purchase of them, defendant's claim to this credit will be disallowed.

3. Damages should be granted equal to the overcharge in accordance with the determinants detailed above. This sum is $462.54. Under Section 205(e) of the Act the court, with certain minor exceptions, may award as damages any amount up to three times the overcharges. It is not clear from the cases whether a court can go below the amount of the overcharges where the overcharges exceed $50. I find

it unnecessary to determine this question, for I would not allow as damages less than the amount of the overcharge in this case even if I were convinced that I had 'the power to do so. However, it is clear that a court has discretion in a proper case to award merely the overcharge as damages. Bowles v. Ammon, D.C., 61 F.Supp. 106; Bowles v. Krodel, 7 Cir., 149 F.2d 398. I think this is such a case for, while I refused the claimed non-essential expenditures as proof that there was no overcharge, I think such evidence, together with the admitted fact that defendant sold the truck at only $100 more than he paid for it, is persuasive evidence of the good faith of defendant and overbalances the failure of defendant to make inquiry relative to the ceiling price before the sale. While defendant can not keep any gain resulting from a violation of the law, I think the limit of the amount of reparation should be the amount of the overcharge.

### On Petition to Amend Opinion.

Plaintiff has filed a paper in which he asks the court to amend its opinion. In effect, it seeks not only a modification of the opinion, but virtually the original amount for treble damages and a reconsideration of the evidence. For present purposes, I shall consider the motion in the nature of a petition for rehearing. The petition seeks a review of the case on the ground that the court failed to take judicial notice of the "Data Book" referred to in the above opinion at a time when it was explained to the court that the "Data Book" was included in Amendment No. 1 to Revised Maximum Price Regulation No. 341. This comes as a complete surprise to the court, for at no time did plaintiff's counsel inform the court or opposing counsel that when he was referring to the "Data Book", upon his examination of one of his own witnesses, that he was referring to RMPR 341. In fact, the document itself was never put in evidence.

The record shows that defendant's counsel, at trial, entered into a stipulation with plaintiff's counsel that if the "Data Book" were in evidence it would show that a truck bearing a serial number, the same as the truck sold by defendant, would be a 1937 model. For purposes of

the present petition, I am required to take judicial notice of RMPR 341 and that it records that the serial number of the truck in question indicates it to be a 1937 model and not a 1939 model; but, here again, we have a conflict in the evidence, as shown above. Plaintiff's testimony, as well as the official records of the State of Delaware, shows the motor car in question to be a 1939 model. Defendant testified that at the time he purchased the truck he believed it to be a 1939 model and the registration and title papers would support his understanding. In fact, the purchaser of defendant's truck, Marini, always thought it was a 1939 model truck and considered it to be such at the time he bought it from defendant. It was not until some time later when he had a fortuitous meeting with an OPA investigator that he learned that the serial number of his truck indicated it to be a 1937 model. Therefore, my problem was to weigh the evidence, as shown by the official records of the Motor Vehicle Department of the State of Delaware and defendant's testimony, as against the serial number and date appearing in the Regulation. No motor car dealer, or expert, testified that he actually saw the truck and that it was a 1937 model instead of a 1939 model. I accept, therefore, defendant's understanding that the truck was a 1939 model because it is supported by the title and registration papers as found in the state records.

 Plaintiff also states it was an abuse of discretion for the court to award single damages. I have found that defendant is guilty of a violation and have accordingly assessed as damages the actual amount of overcharge. The discussion as to defendant's belief at the time, supported as it is by other evidence, is relevant only to the question of good faith as respects treble damages. It is difficult to follow plaintiff's argument that defendant acted in bad faith when, at the time he purchased the truck, he believed and had reason to believe, by virtue of the title papers which he received, that it was a 1939 truck.

Accordingly, plaintiff's petition to amend the court's opinion is denied.